UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID L. SHANKS, JR.,

      Petitioner,

v.                                                                        Case No. 21-C-1166

UNITED STATES OF AMERICA,

      Respondent.

---

## SCREENING ORDER

---

      Petitioner David L. Shanks, Jr., was sentenced on December 3, 2018, to several mandatory life terms following his conviction on multiple drug offenses, including distribution of heroin resulting in great bodily harm to two persons and the death of another, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846 as well as 18 U.S.C. § 2. *United States v. Shanks*, Case No. 18-CR-018. The case was unusual in that Shanks refused to come to court or cooperate with his attorney throughout the trial. The case proceeded without him, and the jury found Shanks guilty of six separate offenses. Despite his refusal to participate, he was acquitted of one of the seven charges he was facing. Cr. Dkt. No. 78.*

      Shanks filed a direct appeal on December 11, 2018. His conviction was affirmed by the United States Court of Appeals for the Seventh Circuit on June 15, 2020. *United States v. Shanks*, 962 F.3d 317 (7th Cir. 2020). Shanks subsequently filed a petition for certiorari, which the United States Supreme Court denied on October 5, 2020. *Shanks v. United States*, 141 S. Ct. 426 (2020).

---

* Citations to docket entries to Shanks' criminal case, No. 18-CR-018, are shown as "Cr. Dkt. No." Citations to docket entries in this civil § 2255 action are shown as "Dkt. No."

Shanks then moved, in his criminal case, for an extension of time to file a motion under 28 U.S.C. § 2255. Cr. Dkt. No. 137. The court denied the motion on September 21, 2021, because it did not have jurisdiction to grant the relief Shanks sought. Cr. Dkt. No. 138. Shanks then filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on October 7, 2021. Dkt. No. 1.

On December 28, 2021, the court gave the petition a preliminary examination in accordance with Rule 4 of the Rules Governing § 2255 Proceedings. Dkt. No. 3. As an initial matter, the court observed that while Shanks' petition was filed two days after the one-year statute of limitations period expired, it appeared that he signed the petition on September 30, 2021. The court concluded that, in light of the prison mailbox rule, Shanks' petition was likely timely but indicated that the Government may choose to assert otherwise. Shanks asserted twenty-two grounds for relief in his petition. The court observed that at least some of the claims appeared to be procedurally defaulted and conclusory, but it noted that Shanks had requested an opportunity to supplement his petition and, given the seriousness of the underlying convictions and the life sentence imposed, the court granted Shanks' request to supplement his petition and allowed him over three months to do so. *Id.*

On April 11, 2022, Shanks filed a motion to supplement and amend his petition. Shanks also filed an amended § 2255 petition in accordance with the court's December 28, 2021 order, which the Clerk docketed as an attachment to Shanks' motion to supplement and amend his petition. The Clerk is directed detach and e-file the amended § 2255 petition (Dkt. No. 4-1), which will serve as the operative § 2255 petition in this matter. Although Shanks filed the amended petition that supplements his original petition, Shanks seeks leave to supplement and amend his petition for a second time to add "exhibits." Dkt. No. 4 at 1. Because the rules governing § 2255

2

proceedings contain no provision for making amendments, proposed amendments to a § 2255 motion are governed by Federal Rule of Civil Procedure 15. *See Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999). Shanks' motion fails to comply with the local rule governing amendments or supplements. Civil Local Rule 15(b) states:

> A motion to amend a pleading must state specifically what changes are sought by the proposed amendments. The proposed amended pleadings must be filed as an attachment to the motion to amend.

Shanks did not attach the second supplemental § 2255 petition he seeks to file to his motion. In other words, the motion only states a desire to supplement sometime in the future; it fails to provide a copy of the proposed supplement he seeks to file. For this reason, Shanks' motion will be denied. For now, the court will proceed to screen Shanks' amended § 2255 petition.

Pursuant to Rule 4 of the Rules Governing § 2255 Proceedings, I must give the case prompt initial examination:

> If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, or take other action the judge may order.

Rule 4, Rules Governing § 2255 Proceedings. During my initial review of habeas petitions, I look to see whether the petitioner has set forth cognizable claims under § 2255. Shanks has asserted 19 grounds for relief.

It is important to note at the outset that "[h]abeas corpus petitions must meet heightened pleading requirements . . . ." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). Although *McFarland* dealt with a petition for relief under § 2254, the same is true of petitions seeking relief under § 2255. The petition must "specify all the grounds for relief available to the moving party," and "state the facts supporting each ground." 28 U.S.C. § 2255,

3

Rule 2(b); *see also Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) ("The § 2254 Rules and the § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading,' as authorized under Federal Rule of Civil Procedure 8(a)."). The reason for the heightened pleading requirement in habeas cases, as the Eleventh Circuit noted in *Borden*, is obvious:

> Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards. The evidence supporting a claim brought under the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), for example, may not be available until the prosecution has run its course. The evidence supporting an ineffective assistance of counsel claim is available following the conviction, if not before. Whatever the claim, though, the petitioner is, or should be, aware of the evidence to support the claim before bringing his petition.

*Id.* at 810. Were the rule otherwise, federal habeas would be transformed into "a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim." *Id.* at 810 n.31. It follows that conclusory allegations of "ineffective assistance of counsel" and vague allegations of "favorable evidence" that was not presented at trial are insufficient. With these principles in mind, the court now turns to the specific grounds for relief asserted by Shanks.

Shanks argues that he was denied his Sixth Amendment right to be informed of the nature and cause of the accusation made against him, to be confronted with witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have effective assistance of counsel because the court erred when it commenced the jury trial at the county jail and instructed Shanks to notify the county jail guards if he wished to attend his trial (Ground 1). He also argues that his trial counsel, Attorney Edward J. Hunt, was ineffective because he failed to object to or challenge on appeal the court's decision to conduct court proceedings at the Brown County Jail (Ground 18) as well as the court's improper remarks to the jury that Shanks elected not to appear at his trial (Ground 7). These issues were already before the Seventh Circuit on direct appeal. On direct

4

appeal, Shanks argued that the trial court did not comply with Federal Rule of Criminal Procedure 43, which he asserts required his physical presence in the courtroom for his jury trial, and that the trial court erred in finding that he waived his right to attend the trial. The Seventh Circuit held that the district court permissibly began trial at the jail and reasonably found that Shanks waived his right to attend the remainder of his trial. *Shanks*, 962 F.3d at 319. When an issue has previously been raised and disposed of adversely to a defendant on direct appeal of his conviction, he cannot relitigate that issue by raising it in a § 2255 motion. *See DeMaro v. Willingham*, 401 F.2d 105, 106 (7th Cir. 1968) ("Relitigation of trial issues under different labels or on expanded allegations that could have been made in the first instance is not contemplated by section 2255."); *Jeffers v. United States*, 451 F. Supp. 1338, 1344 (N.D. Ind. 1978) (citations omitted); *see also Fuller v. United States*, 398 F.3d 644, 649 (7th Cir. 2005). Because the Seventh Circuit rejected this argument, Shanks is not entitled to relief on these claims in his § 2255 petition.

Shanks asserts that trial counsel was ineffective because there was a complete breakdown in communication; Shanks, at one point, requested that trial counsel stop speaking and negotiating on his behalf; and counsel told Shanks he had "no say" in trial strategy (Ground 2). Dkt. No. 4-1 at 2. Shanks does not explain, however, how the breakdown in communication was trial counsel's fault or in what ways Shanks wanted to participate in his trial strategy but was unable to do so. A defendant cannot sabotage his attorney's efforts to effectively represent him and then claim on appeal that he was denied his constitutional right to the effective assistance of counsel.

A claim of ineffective assistance of trial counsel is governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show that (1) counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance deprived

5

the defendant of a fair trial.  *Id.* at 687–88.  A petitioner satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness."  *Id.*  To satisfy the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission of counsel was unreasonable."  *Id.* at 689.  For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential."  *Id.*  That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  The Seventh Circuit has "rejected broad, unsupported assertions of ineffective assistance as well as garden variety attacks raised in the guise of a claim of ineffective assistance of counsel."  *Harlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013) (internal quotation marks, citations, and alterations omitted).  Given this deferential standard of review and Shanks' refusal to cooperate with his attorney prior to and during his trial, his undeveloped and entirely conclusory allegations of ineffective assistance of counsel fail to state a claim.  Shanks cannot proceed on this alleged ground for relief.

Shanks asserts that trial counsel was ineffective because counsel never sent him the plea offer from the government that "guaranteed" him a 15-year sentence (Ground 3).  Dkt. No. 4-1 at 2.  He contends that he would have accepted this plea offer instead of going to trial.  To be sure, failure of counsel to convey a plea offer to his client can constitute ineffective assistance of

6

counsel. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) (holding "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"). But the record in this case belies Shanks' claim that his attorney failed to convey the government's plea offer.

Shanks sent a handwritten letter to the court dated March 25, 2018, in which he detailed the plea negotiations that he and his attorney had been conducting with the Government. Cr. Dkt. No. 15. At the arraignment of Shanks on the first superseding indictment on March 28, 2018, with Shanks in attendance, the Government noted that the new and/or enhanced charges were the result of a continued investigation of Shanks' conduct. Cr. Dkt. No. 104 at 5:17–20. The Government also noted that there had been plea negotiations, but the parties had not been able to come to an agreement to resolve the case. *Id.* at 6:02–05. Then at a status conference held on April 9, 2018, again with Shanks in attendance, the Government noted it had made a new offer to Shanks based on the superseding indictment and noted he had rejected that offer as well, despite the Government's warning of its intent to seek increased penalties by filing an information under 21 U.S.C. § 851. Cr. Dkt. No. 105 at 2:22–3:21.

Attorney Hunt indicated that the Government's summary of the history of the case was correct and invited his client to confirm that he had indeed rejected the Government's current offer of twenty years. *Id.* at 4:21–5:02. Attorney Hunt also acknowledged that Shanks had been aware that the "851 enhancers" would increase the penalties so that he would be facing seven life sentences. *Id.* at 5:03–07. Finally, as the Seventh Circuit noted in affirming Shanks' conviction, Shanks had tried to resurrect the "previously withdrawn offer" on the morning of trial. *Shanks*, 962 F.3d at 322; Cr. Dkt. No. 111 at 90:23–91:17. Given this history, the court is satisfied that Shanks was well aware of any and all plea offers made by the Government. He offers no

7

foundation for his unsupported allegation that his attorney failed to convey an offer that "guaranteed" him a 15-year sentence. In light of the record recounted above and in the absence of any factual allegation supporting his claim, Shanks is not entitled to relief on this ground.

Shanks argues that trial counsel was ineffective because he failed to investigate Shanks' mental health history and order a mental health evaluation (Ground 4). He explains that, as a child, he was admitted to Hartgrove Mental Hospital for in-patient treatment regarding "mental issues" and that, while being housed in Wisconsin Department of Corrections Institutions, he was diagnosed with multiple personality disorder and bipolar disorder. Dkt. No. 4-1 at 3. Even though Shanks may have been diagnosed with these mental disorders, there are no allegations to support the suggestion that Shanks lacked the competency to proceed at the time his case was pending. The evidence at trial revealed that Shanks was a prominent drug dealer in the Green Bay area with a variety of customers. He was the leader of a drug conspiracy, interacted with his customers, kept track of prices for a variety of quantities of various drugs, and handled large quantities of cash. Nothing about his encounters with police, counsel, or the court gave rise to any concerns regarding his competency to proceed.

According to the Presentence Investigation Report, Shanks also had a dozen prior convictions in state and federal court. In none of his previous cases was he found not competent to proceed. Cr. Dkt. No. 87, ¶¶ 94–105. Although Shanks refused to be interviewed as part of the presentence investigation in this case, he told the presentence author who wrote the report for his 2011 federal conviction that "he has never taken any medications or sought treatment when he has been out of custody, stating it never crossed his mind." *Id.* at 35, ¶ 12. Finally, it appeared clear to the court that Shanks' refusal to attend his trial and cooperate with his attorney was part of his attempt to manipulate the court and counsel so as to avoid what he came to realize was the

8

inevitable result of his return to criminal conduct so soon after his early release from his previous sentence. With nothing more than conclusory allegations about a previous diagnosis of mental disorders, Shanks has failed to state a claim of ineffective assistance of counsel based on counsel's failure to request a competency evaluation. Accordingly, Shanks will not be permitted to proceed on this ground for relief.

Shanks alleges that trial counsel was ineffective when he failed to request an adjournment and failed to secure Shanks' rights to attorney-client privilege (Ground 5). He asserts that when the trial was commenced at the Brown County Jail, he asked to speak with trial counsel off the record. Shanks was "forced" to consult with his attorney through a closed door in the presence of his cellmate and any other inmate in the immediate vicinity, which he claims is a violation of his right to attorney-client privilege. Dkt. No. 4-1 at 4. He also asserts that he did not clearly understand the charges brought against him or the court's jurisdiction and that an adjournment would have "went a long way toward fixing this error." *Id.*

Again, the record belies Shanks' claim that he was in need of an adjournment or that he did not understand the charges against him. The record reflects that trial was originally set for April 9, 2018. Cr. Dkt. No. 5. The court granted the defense's request for an adjournment of the trial at the arraignment on the superseding indictment. Cr. Dkt. No. 104 at 20:22–21:11. Thereafter, the trial was set for August 13, 2018. Cr. Dkt. No. 17. A further adjournment was granted on May 29, 2018, at which time the trial was rescheduled for September 10, 2018. Cr. Dkt. No. 34. Attorney Hunt indicated at that time that he had sufficient time to be prepared to properly represent the defendant. Cr. Dkt. No. 106 at 4:08–12. The question of an adjournment again arose at the hearing on Attorney Hunt's second motion to withdraw as counsel on August 23, 2018. Attorney Hunt stated in his motion that Shanks had discharged him and instructed him

9

that he was not authorized to speak on his behalf before the court on any legal matters. Cr. Dkt. No. 50. At the hearing held on the motion, the court ascertained that Shanks did not wish to represent himself and that there was no reason to believe that appointing a different attorney would change Shanks' attitude. Cr. Dkt. No. 108 at 4:04–8:11. The court thereupon denied Attorney Hunt's motion to withdraw and instructed him that he would be representing Shanks at the upcoming trial with or without Shanks' cooperation. *Id.* at 10:06–21. Given Shanks refusal to cooperate with him and the Government's need for a certain trial date, the court again asked Attorney Hunt if he needed an adjournment. Attorney Hunt responded that he was not asking for an adjournment. *Id.* at 14:01–09. The issue of an adjournment and the circumstances concerning the commencement of trial in the jail were again addressed in the order entered by the court after Shanks notified the court that he intended not to appear for trial. Cr. Dkt. No. 59.

In light of this record, the extensive colloquy with Shanks about the charges he was facing and his right to attend the trial and assist his attorney in his defense, and his prior experience with the criminal justice system, including his previous federal conviction for possession of crack cocaine with intent to distribute, Shanks' claim that he did not understand the charges brought against him or the court's jurisdiction are patently incredible. He is not entitled to relief on this ground.

Shanks argues that trial counsel was ineffective when he failed to object to or challenge on appeal the "vindictive prosecution" (Ground 6). Dkt. No. 4-1 at 4. He asserts that, after he decided to exercise his constitutional right to a jury trial, the Government sought to enhance the charges brought against him. Shanks maintains that the Government was required to explain why it waited to pursue enhanced charges after Shanks decided to go to trial. This claim is procedurally defaulted. "A claim cannot be raised for the first time in a § 2255 motion if it could have been

10

raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (citation omitted). The failure to raise issues in a direct appeal results in a procedural default unless the petitioner can show cause and prejudice. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995). Ineffective assistance claims are not subject to the usual procedural default rules. *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("Failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."). Stated differently, a petitioner can raise ineffective assistance of counsel claims when they are not asserted in a direct appeal.

Although Shanks' Sixth Ground is framed as an ineffective assistance of counsel claim, he essentially argues that his constitutional rights were violated because the Government failed to explain why it decided to pursue enhanced charges after he decided to go to trial. This claim is procedurally defaulted, and Shanks has not explained why he could not raise this claim earlier. In any event, Shanks' conclusory assertion that the Government engaged in a "vindictive prosecution" is undeveloped, and he has not "affirmatively show[n] through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." *United States v. Jarrett*, 447 F.3d 520, 525 (7th Cir. 2006) (internal quotation marks and citation omitted). For these reasons, this ground for relief must be dismissed.

Shanks asserts that trial counsel provided ineffective assistance of counsel because he did not present expert and medical evidence to challenge the testimony of the Medical Examiner and Pathologist, Dr. Vincent Tranchida as to the cause of death of Jason Vogels (Ground 8). Jason Vogels was the individual who died of a drug overdose after ingesting fentanyl-laced heroin and methamphetamine allegedly purchased from Shanks as charged in Count 1, the conspiracy charge,

11

and Count 3, one of the distribution charges. He, along with two other individuals, Erik Sikich and Kyle McCool, who were revived with Narcan, provided the basis for the charges that carried the four separate mandatory life sentences that were imposed on Shanks. Dr. Tranchida testified that Vogels died of a drug overdose due to the combined effects of four different substances: Fentanyl, heroin, methamphetamine, and alprazolam, which also goes by the name Xanax. Cr. Dkt. No. 108 at 90:17–21.

The evidence showed that Vogels had a prescription for Xanax, and Dr. Tranchida testified that the amount of alprazolam found in his blood was within the therapeutic range and by itself would not have caused his death. *Id.* at 93:05–16, 98:14–16. There was also evidence that the heroin Shanks sold was commonly laced with fentanyl. Cr. Dkt. No. 111 at 69:06–10, 141:21–24. In Dr. Tranchida's opinion, the heroin, fentanyl, and methamphetamine were in sufficient amounts to cause death. *Id.* at 98:17–19. Shanks contends that his attorney was ineffective in failing to obtain expert medical evidence to show that drugs other than the methamphetamine and heroin he sold to Vogels could have cause his death. Shanks also contends that his attorney was ineffective in failing to introduce evidence that Vogels was depressed and suicidal.

This claim fails because Shanks has not alleged that an expert was available and willing to testify that Vogels did not die as a result of ingesting the drugs he sold. An attorney's representation is not deficient for failing to present evidence that does not exist. Unless such evidence was available, his attorney could not be found to have been ineffective in failing to present it.

As for Shanks' suicide theory, the evidence offered at trial was that Vogels' friend, Bill Hood, had arranged for Vogels to purchase some methamphetamine and heroin from Shanks on Saturday evening, September 9, 2017. After purchasing heroin and methamphetamine from

12

Shanks at Hood's apartment, Vogels headed back to his own apartment, telling Hood he would see him the next day to watch the "Packer" game together. Cr. Dkt. No. 112 at 193:04–196:25. Hood testified that the last he heard from Vogels was in the form of a text message he received after midnight telling him "Thanks for helping. Both items were topnotch." *Id.* at 198:02–07. No one heard from Vogels on Sunday and his mother discovered his body at his apartment slumped over a coffee table on Monday.

In light of this evidence, the testimony of Dr. Tranchida, and the absence of any suicide note, Shanks' allegations that his attorney's failure to introduce evidence to show that Vogels was upset about his girlfriend leaving him or that he suffered from chronic depression and was treatment resistant are not sufficient to state a claim for ineffective assistance of counsel. And the fact that two other offenses that Shanks was convicted of also carried mandatory life sentences further supports the conclusion that even if Shanks was able to show his attorney provided ineffective assistance in connection with the death of Jason Vogels, he suffered no prejudice. Accordingly, this claim also fails.

Shanks claims that trial counsel was ineffective because he failed to object to and/or challenge on appeal the sentencing enhancement that was applied based on the overdose resulting in serious bodily injury to Kyle McCool (Ground 9). He alleges that McCool was a co-conspirator because he admitted to the Brown County Drug Task Force that he was a middleman for heroin deals with people he knew through Shanks. Shanks asserts that McCool was a co-conspirator and that, as a co-conspirator, Shanks cannot be liable for McCool's serious bodily injury. This argument also fails. Shanks' contention that McCool cannot be a victim of his crime because he was working with him to distribute drugs in the Green Bay area has no basis in law or logic. The

jury was properly instructed as to the elements of the offence, and the evidence was more than sufficient to support the jury's verdict as to this count. Ground Nine is therefore dismissed.

Shanks also asserts that trial counsel was ineffective because he did not object to and/or challenge on appeal the sentencing enhancement that was applied based on the overdose resulting in serious bodily injury to Erik Sikich (Ground 10). He argues that he should not have faced a sentence enhancement because the Government failed to satisfy the "chain of distribution" standard. Shanks contends that the Government was required to show distribution from Shanks to Cory Vande Velden and then from Vande Velden to Sikich. He maintains that he was not responsible for Sikich's overdose because Vande Velden shared the heroin with Sikich in a "social setting." Dkt. No. 4-1 at 8. Shanks also asserts that trial counsel failed to challenge the presence of cocaine and THC in Sikich's system because those drugs could have played a part in his overdose.

This claim ignores the testimony of Vande Velden that he purchased the heroin he shared with Sikich from Shanks and the text messages with Shanks that corroborated his testimony. Cr. Dkt. No. 112 at 240:15–246:09. It also ignores the testimony of Dr. Jocko Zifferblatt, the emergency room physician who treated Sikich for the drug overdose he sustained after ingesting the heroin Vande Velden had provided him on September 22, 2017. Cr. Dkt. No. 113 at 64:15–69:24. Dr. Zifferblatt testified that the fact that Sikich was revived with Narcan means that his overdose was caused by the heroin he ingested. According to Dr. Zifferblatt, Narcan works only on opiates; it doesn't work on other drugs. *Id.* at 70:02–04. Had he not received Narcan, Dr. Zifferblatt testified, Sikich would have died. Shanks' claim that his attorney was ineffective in failing to offer evidence challenging Dr. Zifferblatt's testimony fails because he offers no reason to believe such evidence exists. Finally, Shanks' claim also rests on a misstatement of the law.

14

Shanks' contention that he cannot be liable for Sikich's overdose because Vande Velden shared the heroin with him in a social setting, like several of his other claims, has no support in logic or in law.

Shanks argues that trial counsel was ineffective because he failed to object to and/or challenge on appeal the Government's use of false testimony from William Hood and Kyle McCool (Ground 11). He asserts that Hood and McCool's trial testimony was inconsistent with the pretrial statements they made. Shanks maintains that, in Hood's pretrial statements, he indicated that Shanks never met Jason Vogels, but Hood testified at trial that he witnessed Shanks sell the drugs directly to Jason Vogels. As to McCool's testimony, Shanks asserts that, in McCool's pretrial statements, he stated that he had only purchased heroin from Shanks two times, but at the trial, McCool testified that he purchased heroin from Shanks 20 to 30 times in one month. Dkt. No. 4-1 at 9; Cr. Dkt. No. 112 at 86:21–22. Shanks also contends that McCool told three different stories about what drugs he used to cause his overdose: McCool told his girlfriend that he snorted oxy, he told hospital staff that he took ecstasy and heroin, and he later claimed to have only taken heroin that he received from Shanks. Shanks asserts that McCool's toxicology report showed that McCool had opiates, Benzodiazepines, Cannabinoids, and fentanyl in his system at the time of the overdose. Shanks offers no basis to support his contention that Hood and McCool's testimony was false. Both Hood and McCool testified under oath; their testimony was not inconsistent with prior statements and was corroborated by text messages admitted into evidence. *See* Tr. Exs. 14, 22. Trial counsel thoroughly questioned both witnesses on cross-examination. Shanks' conclusory allegation is insufficient to state a claim of ineffective assistance of counsel. Therefore, this claim fails.

Shanks asserts that trial counsel was ineffective because he did not request a "buyer-seller instruction" be given to the jury (Ground 12). *See* Criminal Pattern Jury Instruction 5.10(A). Shanks is mistaken. The court did give this instruction to the jury. Cr. Dkt. No. 76 at 9. Therefore, counsel was not ineffective on this basis, and this ground for relief is dismissed.

Shanks argues that trial counsel provided ineffective assistance when he failed to object to the Government's witnesses' service as confidential informants and co-conspirators (Ground 13). He asserts that multiple witnesses, including Jessica Arterburn, Kayla Kennedy, and Carley Gerarden became confidential informants prior to their involvement with Shanks. Shanks maintains that a confidential informant cannot also be a co-conspirator. But, again, Shanks' contention has no basis in law or logic. Because counsel was not ineffective on this basis, Ground Thirteen is dismissed.

Shanks asserts that trial counsel was ineffective because he failed to make objections to the indictment (Grounds 14 and 16). He argues that the indictment was improper because it charged two or more offenses in the same count or charged the same offense in more than one count and did not charge him under the proper federal statute. Shanks also asserts that trial counsel was ineffective because he did not object to and/or challenge on appeal the validity of the judgment of conviction (Ground 15). He asserts that the judgment does not properly identify the federal statutes or sentencing provisions that he was found guilty of violating. But there was no error in the indictment or the judgment. As a result, counsel was not ineffective for failing to raise these issues. Therefore, these grounds for relief are dismissed.

Shanks asserts that trial counsel failed to object to and/or challenge on appeal the unconstitutional vagueness of 21 U.S.C. § 841(b)(1)(C) (Ground 17). Shanks' contention that he cannot be found to "distribute" a controlled substance to individuals who acquire possession of a

16

small amount of a controlled substance for their personal use has no basis in law or logic. Under § 841, "it shall be unlawful for any person knowingly or intentionally" to distribute a controlled substance. *See* 21 U.S.C. § 841(a). The term "distribute" means to "deliver (other than by administering or dispensing) a controlled substance." 21 U.S.C. § 802(11). Section 841 was not unconstitutionally vague as applied in this case. Accordingly, Ground Seventeen is dismissed.

Shanks argues that trial counsel failed to challenge the Government's failure to establish the proper elements for the overdose enhancements (Ground 19). But he merely contends that the Government did not possess the evidence required to enhance his sentence. Shanks' undeveloped and entirely conclusory allegations of ineffective assistance of counsel on this basis fail to state a claim. In short, Shanks cannot proceed on this alleged ground for relief.

For these reasons, Shanks' motion to amend his § 2255 petition is **GRANTED**. The Clerk is directed to detach and e-file the first amended § 2255 petition (Dkt. No. 4-1), which serves as the operative § 2255 petition in this matter. Shanks' motion to supplement the petition is **DENIED**. Shanks has not asserted claims that are cognizable under § 2255. Therefore, Shanks' § 2255 motion is summarily **DENIED**, and the case dismissed. The Clerk is directed to enter judgment accordingly. A certificate of appealability is denied. I do not believe that reasonable jurists would believe Shanks has made a substantial showing of the denial of a constitutional right.

Shanks is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal the court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. Civ. P. 3, 4.

**SO ORDERED** at Green Bay, Wisconsin this 31st day of October, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge